Mr. Chief Justice, and may it please the Court, there are three main points I wish to emphasize to the Court this morning. First, because the California Supreme Court rejected Mr. Pinholster's claim of ineffective assistance of counsel on its merits, federal habeas corpus relief is unavailable to the Court of Appeals. Second, because the California Supreme Court would not grant relief under 28 U.S.C. section 2254d1 unless Mr. Pinholster first met his burden of demonstrating that the State court rejection of his claim was unreasonable. He did not do that in this case, and thus the lower courts erred in granting him habeas corpus relief. Second, because Mr. Pinholster never even alleged, let alone proved, that he could not have presented the factual basis upon which the Ninth Circuit predicated its decision to grant relief when he was in the State court, 2254e2 should have been a barrier to the State court federal evidentiary hearing. Sotomayor Could we just clarify what you mean by factual basis? To be precise, he didn't present the expert opinion with a diagnosis or because the diagnosis was based on a series of facts that to me appear to have been presented fully to the State court, is that correct? With the exception of the fact that the defense attorneys only worked 36 hours, the billing records. I think that's the only underlying facts to the opinion that appear new, am I correct? No, Your Honor. The diagnosis itself is a fact. All right. So we're only talking about the expert opinion facts being new. We – there are a number of facts that were new in the Federal court. Besides the opinion, what were they? Well, as the Court adverted, there was also the notion that there was somehow a limited amount of time. Well, he did allege that in his petition before the State court. He did not allege 6 1⁄2 hours, Your Honor. Not specifically, but he said that his counsel didn't prepare. That's precisely correct, Your Honor. And he pointed to the fact that counsel basically said at the trial, I didn't think we were going to have a mitigation hearing as proof of that, correct? He did point to that, Your Honor. But we would note that the 6 1⁄2-hour conclusion drawn by the Ninth Circuit and drawn by the district court is not fairly supported by the record. But putting that aside, the principal fact that we are focusing on that we think is a new and significant change in the factual posture of the case from the time he was in State court to the time that he was in Federal court is the diagnosis of organic brain damage by the expert, which is not simply the opinion of the expert, but a question of material fact that was relied upon by the Ninth Circuit in its decision to grant relief. The failure to ever tell the California Supreme Court that Petitioner has organic brain damage and the centrality of that factual determination on the Ninth Circuit's decision-making is, was a substantial difference between the facts upon which the State, with which the State court was presented and the facts that the Ninth Circuit granted, rested its decision to grant relief. Kagan. Mr. Bilderbach, I know that that's the principal fact that you rely upon, that there is a difference. But could you give us a full catalog of the facts that are different in the Federal court record from the facts that are different in the State court record? Is there anything other than the medical testimony and the billing sheets, or is that the extent of it? Those are the significant facts that we think are relevant to the discussion of whether or not the State court determination should be or could properly be found to have been unreasonable, was the difference in the specificity of the nature of the claim of deficient performance in terms of the timesheets. Roberts. What about Dr. Stahlberg's new deposition? Doesn't that count as a new fact? I'm looking at your brief on page 11. At a deposition just before the evidentiary hearing, Dr. Stahlberg revealed that nothing in the new material called into question his original diagnosis. Oh, certainly, Your Honor. And I understood the questions from the court to be asking which new facts were relied upon in the decision to grant relief. Certainly, there were new facts adduced during the Federal proceedings that we think invade against a grant of relief, and I think that the fact that Your Honor points to is precisely one of those. But in terms of the new facts, and let's be clear that 2254d1 is a rule that says that relief cannot be granted if the State court determination was unreasonable. To the extent that relief is denied, the inclusion of new facts in the analysis may not run afoul of d1 at all. So here, because the Ninth Circuit relied so heavily upon the organic brain damage diagnosis, and because that diagnosis is not a new fact, it's not a new fact. Could we just be clear? Yes. I thought that Dr. Stahlberg's affidavit in the State court said that he had brain damage of some sort. That's not accurate, Your Honor. I thought it said that he the school records show evidence of mental disturbances and some degree of brain damage. I believe that. What he did say, I think there's a difference between, because he pointed to epilepsy, he pointed to a series of things that showed some brain damage. I just want to clarify. Certainly. It's not organic damage. The issue is whether the organic damage created a dysfunctionality that contributed to the events. That's what he didn't know. And he said it's not – I would have needed more information to figure that out. Well, he never said that if he had had the additional information that he would have diagnosed Mr. Penholster as suffering from organic brain damage. No, no, no. Organic brain damage dysfunctionality. There's a difference between the two diagnoses. Absolutely, Your Honor, but I want to be clear that Dr. Stolberg never diagnosed Mr. Penholster with organic brain damage, even at the conclusion of the Federal evidentiary hearing, following which he had access to all of the facts that habeas counsel managed to unearth during the course of the Federal proceedings. Your adversary points to the difference in language between D-1 and D-2. Yes. D-2 refers to unreasonable in light of the facts, unreasonable determination of facts in light of the records before the Court, and Subdivision I doesn't. It speaks only an unreasonable decision. Could you address the difference in the language and why that difference doesn't suggest that the question of an unreasonable legal determination should be based on the record before the Federal Court, which in most instances, the vast majority of instances, is just a State court record? That's correct, Your Honor. But there are exceptions in E-2 for hearings. Yes. So why shouldn't the first subdivision be read to mean unreasonable legal determination in light of the record before the Court? Because subdivisions D-1 and D-2 serve very different purposes. Subdivision D-2 is concerned with determinations of fact, and the additional language that the Court points to was an attempt to limit the bases upon which a Federal court could overturn a State court factual determination. Prior to the passage of AEDPA, a Federal court could overturn a State court determination of fact not simply because the evidence was lacking, which is the current state of the law, but also because it found some sort of procedural defect or a number of other bases that had grown up in the common law. With the passage of AEDPA, Congress limited the bases upon which a State court factual determination could be rejected to only one. Sotomayor, I'm suggesting that if a State court gets a proffer of evidence from a State petitioner who says, I have a billing record that shows that my attorney worked only 6 hours, and the State says, we're not admitting that billing record because it hasn't been authenticated, so we're not looking at that fact. And the Federal habeas looks at what was proffered and says, this is authentication under any rule, State or Federal. It was improperly admitted, so their legal determination was wrong. Not unreasonable legal determination as to the IAC, because, in fact, he got it. I used the example of 6 hours. The billing record could show 5 minutes, so that there's no dispute that the person spent essentially no time on mitigation, didn't present anything. The clearest case you want. You're suggesting that a habeas corpus court is no longer permitted to look at that new evidence? What I'm suggesting is that the language of D-2 was designed to limit the bases upon which a Federal court could overturn a State court factual finding. Of course, our case doesn't really involve these things. Sotomayor, but you're going back to D-1. Yes. And the symmetrical language in D-1 is the language. It's not symmetrical, though. I would disagree, because I believe the symmetrical language in D-1 is the limitation on the Federal court's reliance on lower Federal court authority to overturn State court factual determinations. Prior to the passage of AEDPA, lower Federal courts were free to look to their own prior precedent, the prior precedent of the circuit courts, to say that the State court determination of a question of law was unreasonable. In both statutes, Subdivision D-1, which has to do with questions of law and mixed questions, the additional language narrowed the focus to a new and more limited basis for Federal review or to find the State court determination unreasonable. In D-2, there is this symmetrical limiting language which overturned what had historically been several bases for rejecting a State court factual determination. But in both sections, the law is clear that the examination is of the application that was conducted by the State court. The section itself speaks in the past tense, and the very concept of reasonableness compels the conclusion that the State court determination can only fairly be read in light of the facts that were squarely presented to the State court. Otherwise, we could be in a situation where all of the facts before the State court are entirely removed, an entirely new set of facts are proven up in the Federal court, and we're going to say that notwithstanding that wholesale change in the factual basis of the claim, that the State court determination was not merely wrong, but unreasonable. And it is this notion of unreasonableness, and it is the primacy of the State court determination of the claim, that is the central feature of the EBPA reforms to Federal habeas corpus. The point was to make State court determinations the primary forum for adjudicating Federal constitutional claims, and Federal courts were only supposed to interfere in those determinations reluctantly. And if you examine the language of EBPA, you'll see that in many respects it mirrors the language of 2244, the second or successive language in Federal court. The purpose of EBPA was to enforce upon Federal courts the same respect for State court determinations of claims that Federal courts showed to their own prior State court determinations of claims. State court determinations of Federal constitutional claims are not lesser preachers deserving of less respect than Federal court determinations of claims. And here they put very specific language in the statute that was designed to ensure that when a Federal court is examining a State court determination of a claim, it limits itself to only those facts that were before the State court. And indeed, this Court has specifically said so in Holland v. Jackson, that the D-1 determination is done in light of the record before the State court. Similarly, in the language of the State court. Sotomayor Well, there's a paragraph right after what you cite that basically says, unless there's a hearing. So Hollingworth's doesn't stop at the point that you're quoting. It goes on in the very next sentence to say, unless a hearing has been held. And if a hearing is appropriately held, that's a very different question. But as this Court stated in Michael Williams, if the 2254 D-1 question is dispositive, no Federal evidentiary hearing is required. And that would be our position in this case. Because this claim survives 2254 D-1 scrutiny, the Federal evidentiary hearing should not have been held just as, in the Michael Williams case, this Court ratified the decision of the district court not to hold an evidentiary hearing because the claim failed under D-1. Sotomayor So why don't we start the way that you are proposing, which is to start with E-2. Was the hearing appropriately held first? And if it was, why are we excluding the evidence that was developed at that hearing? What you're proposing is the reverse, to say we start at D-1. Goldstein, I am. Sotomayor And only if the Petitioner wins under D-1 on proving that the decision on the facts before that at the State court were reasonable, that you ever get to E-2. Goldstein, and that's what I'm saying. Sotomayor Why is that logical? Why isn't it logical to start with E-2, which is, it says in E-2, these are the prerequisites to having a hearing. You prove you're entitled to it. Why are we excluding those facts from the decisionmaker's consideration? Goldstein, Well, setting aside for the moment a point I hope to get to, which is I believe that they did fail under E-2, but assuming the premise of the question, which is that E-2 has been satisfied and that the Federal evidentiary hearing might be appropriate, it makes no more sense to conduct a Federal evidentiary hearing before you conduct a D-1 analysis than it would to conduct a Federal evidentiary hearing before you do the 2254A analysis of whether there's a Federal question, the 2254B and C analysis of whether the claim is properly exhausted, or the 2254D analysis of whether the State court resolution of the claim was reasonable. The statute is laid out in a methodical, calculated, and logical manner. And if the Court just adheres to the calculated, methodical, and logical manner of the statute. Sotomayor, I can tell you the one thing you've said that makes no sense. There's nothing logical about the statute or clear about the statute. As the legion of cases that the lower courts have addressed in trying to interpret it and as the legion of Supreme Court cases that have dealt with the statute. Well, I would submit that we could bring some much-needed clarity to some of the confusion on these issues if the, I think, the plain language of 2254D-1, which is retrospective and contextual, is given its full force and effect. How does that work, counsel, if you have new evidence? My claim was decided, it was reasonable under D-1 based on what they knew, but I've come up with new evidence that I think could not have been reasonably discovered before the D-1 hearing. What happens to that? It seems to me you determine whether that evidence can come in under E-2. Well, the question, and I think the question the Court's asked seems to implicate the ACLU's hypothetical in their amicus brief. But the problem with doing the E-2 analysis before we examine the reasonableness of the State court determination is those new facts that were never presented to the State court are going to, as it did in this case, confound the Court's analysis of whether the State court determination was reasonable. If new facts arise which call into question some factual determination by the State court, or let's say new evidence arises which calls into question a State court factual determination, of course, that implicates subdivision D-2 and that implicates subdivision E-1, neither of which are in play in our case. But under those circumstances, we might find ourselves asking the question, depending upon the nature of the new evidence, whether or not that evidence is of such a caliber that it's going to transform the claim. And if it so transforms the claim, that we're no longer going to consider it, the same claim that was adjudicated by the State court. Roberts. So you think, and I've had trouble understanding the party's position on this, when you talk about claims, you don't mean totally different legal bases. You mean different evidentiary support. The claim that it's ineffective assistance of counsel based on organic, the failure to discover the organic brain damage, you say, might or might not be considered a new claim, and therefore, D-1 would not be a bar to that. Oh, it's our position that the introduction of the organic brain damage evidence fundamentally changes the nature of this claim, so that this is the claim upon which the Ninth Circuit granted relief is a claim that was never presented to the State court. It is not simply a matter of additional evidence that tends to support. And the best evidence. And the reason that doesn't undermine your position is because you think it's evidence that could have been discovered and presented earlier. Well, indeed, the very nature of their claim compels the conclusion that it could have been presented. I understand that. But if it were evidence that could not have been discovered previously, then D-1 does not bar looking at E-2. Depending upon the nature of the evidence. If it's really a new claim. And again, I think we have a pretty well-settled body of jurisprudence that's instructive on that, and that is the 2244b2b2 analysis of when a claim that was previously adjudicated on the merits by a Federal court can be revisited in a subsequent petition that is filed in the Federal court. If the nature of the claim is so fundamentally changed that we're going to consider it a new claim, then it is not the same claim that was presented to the State court. However, because it wasn't presented to the State court, depending upon the availability of a State remedy or any State procedural bars, those sort of conditions on the evidence are pretty basic. Roberts, I suppose the Federal court can send it back to the State court for exhaustion. If that's an appropriate remedy. But the problem with the procedure that was used in this case, and some of this I acknowledge is idiosyncratic to this case because the district court was unaware that it had applied until very late in the proceedings. But the problem with following a procedure that allows the development of evidence, notwithstanding the reasonableness of the State court determination, is you are very often, if not typically, going to find a situation where even if the State court determination of the claim was wholly reasonable, the claim is changed based upon these new facts developed for the very first time in Federal court, and then that's going to mean that it's a substantially transformed claim. Kennedy, I'll think it through, but it seems to me that it's not. It's not consistent with what I thought the theory of your brief was for you to tell the Chief Justice that this is a hypothetical, it was a new claim. Take the ACLU hypothetical that you discuss in your reply brief. Is that a new claim? I don't think that the ACLU hypothetical states a new claim. I was speaking of in our case the condition of the organic brain damage evidence. So I think that in the hypothetical that the ACLU. Kennedy, but if it's a new claim, then we don't look to D because it wasn't adjudicated on the merits, and so you go to E. Well, if it was, that's absolutely correct, Your Honor. If you have a claim presented to the Federal court that was never adjudicated on its merits by the State court, and if we're further positing that there's no available State court remedy. So then now it seems to me you're saying that this is an E claim and that you'll just fight the battle on whether or not it could have been discovered through the exercise of due diligence. And you're out of the D1, D2 framework that you've been arguing up to this point based on the Chief Justice's question and your response. If we assume that the claim is a new claim, if we assume that. I thought you said you agreed that it was. In my case, I agree that the facts presented to the Federal court were never presented to the State court, and those facts fundamentally transformed the claim, such that the claim upon which the Ninth Circuit granted relief was never presented to California. Kennedy, so then this is an E-2 case? No, Your Honor, because you only can leap to E-2 if the State court never had the opportunity to examine the facts of the claim and if the Petitioner can show that he could not have previously presented the claim to California. Then it's a procedural bark? Then it's a procedural bark case? Well, it — depending on how the State court reacts to the new evidence. Yes, if the State court erects a procedural bar, then, yes, this Court is well-settled and the jurisprudence on the question of procedural bar is going to control whether or not we can reach the merits of the claim in Federal court. That's absolutely correct. But here, part of the problem in the instant case is that the very nature of the claim that they've presented precludes the conclusion that they could not have presented this evidence to the State court in the exercise of reasonable diligence. They have asserted that any reasonable attorney in 1984, at the time of the trial, had to discover the organic brain damage diagnosis that Dr. Vinogradoff offered in Federal court. But the question of what's a claim, so the claim here could be ineffective assistance at the penalty stage, or you could be saying, no, the claim is ineffective assistance for failing to present evidence of organic brain damage. That would be a narrower understanding of the claim. Or still narrower, it might be ineffective assistance for failing to present evidence of a particular kind of brain damage, frontal lobe brain damage, which is what the new doctors said, as opposed to what the old doctors said, which was bipolar disorder. So how do we choose the level of generality, if you will, when we try to figure out what the claim is? Well, of course, a claim is made up of two components, and one of them is the legal theory of the claim, and the other is the factual landscape that we're asking that legal theory to be applied to. So, for example, if someone were to present to a State court or, frankly, to a Federal court a claim as general as the first statement that you made, Justice Kagan, that my trial attorney gave me ineffective assistance of counsel at the penalty phase, that's a claim that's void for vagueness. Rule 2 requires that you specifically identify the factual bases of your claim to this Federal court in your Federal petition. And California has a similar rule that requires you to communicate the factual bases of the claim. If we utterly change the factual basis of the claim, then it is, in essence, a new claim. I see that I'm almost out of time. I'd like to reserve. Roberts. Thank you, counsel. Thank you. Mr. Kennedy. Good morning, Mr. Chief Justice, and may it please the Court. There's been a lot of discussion about changes from State to Federal court. But if we limit ourselves even to the evidence that was only presented in State court, the mitigation evidence demonstrates an objectively unreasonable application of Strickland, and the judgment of the Ninth Circuit should be affirmed on that basis alone. We presented a substantial amount of legal specificity and factual specificity in support of our claim. We alleged in State court that his mom had run over his head, that at age two and a half and a year later his head had propelled through the windshield in a car accident, and that it caused mental and organic impairments that affect intent and culpability. And Justice Kagan asked, what is the rule for the generality of the claim? I believe it is that which focuses on what is legally relevant in the habeas hearing. Scalia, but, look, you say that even on the basis of the facts before the California court your client deserved relief. That may well be, but that's not what the Ninth Circuit said. The Ninth Circuit said that your client deserved relief in light of the facts before the California court, plus other facts. Now, I'm not going to go back and answer a hypothetical question of whether if the Ninth Circuit said on the basis of those facts alone that were before the California court, if the Ninth Circuit had said that, would that opinion be affirmed. That's not the opinion they came up with. They added facts. So it seems to me that you have to live with what they wrote. And the basis of their decision included additional facts. We do have to live with the basis that the Ninth Circuit wrote. And the Ninth Circuit majority in Bonk said that there were alternate basis for granting relief. It felt that the E-2 Federal hearing was compelling. But it specifically stated that if you set aside the new mental health theories that were introduced in Federal court and focused only on the historical upbringing in childhood and the mental health facts alleged in State court, that basis and that basis alone would support a finding. And the dissent mentions this as well. Roberts. A finding under the standards that we've applied under AEDPA? Yes. An objectively unreasonable application of Strickland. And, you know, that's in this case presents no issue. I mean, if their holding is that in the – in your habeas hearing in State court, the evidence presented in State court at that hearing was sufficient and was required, required that State court to find that you win on this issue, the State court in holding to the contrary is objectively unreasonable, well, then you win. And why are we all here? Yes. And in our opposition for cert, we said this, that we thought it should not be granted because of the presentation in State court. Not because it wouldn't be because of the presentation. We have to determine under AEDPA that it was objectively unreasonable for this lawyer to get a psychiatrist or whatever his status was, to get a report, which he did and which he looked at, in which the psychiatrist or psychologist said, look, there's nothing here, and he went through all the stuff that was there. And, in fact, after the Federal evidentiary hearing, he said, well, in light of this new evidence, I'm still correct, and objectively unreasonable for this lawyer to say, look, my best bet is to put his mother on the stand, that that might engender sympathy, and portray him as not as bad a guy as everybody says, as opposed to putting on all this evidence that explains why he's such a bad guy. Those are two we've said, those are reasonable choices. If you're relying on that basis, we have to decide that it is objectively unreasonable for a lawyer to proceed on that basis. Yes, and it is in the facts of this case, Mr. Chief Justice. First, counsel didn't make a reasoned strategic decision to put forward a certain mitigation strategy based on the mother. Counsel didn't think the case was proceeding in the penalty phase. Ginsburg. What about the argument that a good deal of mitigation evidence came out during the trial on guilt? It did not come out, Justice Ginsburg. A few little pieces of information were given by Mrs. Brashear, Mr. Penalty's mom, but there was no relationship of how his traumatic head injuries then affected him and caused him damage, and so the presentation was incomplete, and even the State's own expert, Dr. Stahlberg, after he had actually seen all the documents that he would have wanted to receive if he was doing a mitigation mental health phase, he said it was profoundly misleading. It was. Kennedy. And this goes back to Justice Scalia's question. The question on which we granted, question one, is whether the Federal court may reject the State court adjudication of a Petitioner's claim as unreasonable based on a factual predicate for the claim the Petitioner could have presented to the State court but did not, and that describes what you're talking about in response to Justice Ginsburg. Now, the Petitioner unaccountably has told us a few minutes ago that this is a new claim, which I think changes the whole question. But it seems to me the claim is whether there's ineffective assistance of counsel by reason of the mitigation evidence. And in that case, we go back to Justice Scalia's opening. The question to you was that the Court relied on different evidence, evidence that was not in the State hearing. And that's the question, whether or not they can do that, if this evidence could have been presented. And it could be, and certainly it could have been presented. Well, Justice Kennedy, the Ninth Circuit did make alternative rulings, but turning to the question of the new evidence, we believe the new evidence was properly considered, although the Court made it clear that it would affirm based only what was on State court, because that showing was so substantial in and of itself. But turning to the new evidence, there is a reason things like this happen. In California, the claim was denied without any hearing and without any explanation. And then the case moves to Federal court, and for the first time, it's the State that starts bringing forth its mental health theory to rebut the offered theory and starts to question whether or not Dr. Stahlberg, who was our expert, has a neurology license and can opine on how epilepsy affects intent and culpability. Roberts. Just to pause for a moment, you said there was no hearing in the State court. That was because the State court, pursuant to the established procedures, assumed everything you wanted to show was true. It's a little bit much. I mean, you were not going to be in any better position after a hearing than you were before the State court. Mr. Chief Justice, the California Supreme Court didn't tell us what I — what they did. It is true that there is a procedure for provisionally assuming facts are true. They didn't say that they did that here. And the backdrop against how this case happened in State court is we presented all of the allegations with affidavits in support of them, and the California Supreme Court issued an OSC, which normally means they think if the showing is true, it's got to be granted and there has to be a hearing and a ruling that describes the reasoning. Then the State filed in State court documents fairly conclusory, saying you shouldn't believe Dr. Woods. He came and did this evaluation 10 years after the fact. You shouldn't believe him. You shouldn't believe trial counsel. Trial counsel was disbarred. And after that, the State supreme court withdraws the OSC and issues a postcard denial. That suggests that we didn't get the procedures that are referred to, at least from the State's perspective. Alito, but isn't it the California rule that a hearing had to have been conducted unless they concluded that the Petitioner was not entitled to relief based on the facts alleged in the petition? I think that's the rule, Justice Alito. But if that is what was done here, because it is the most commonly invoked rule, it was objectively unreasonable, because in light of the presentation that was made in State court, and I've given the court some of it, that was definitely a showing of an unreasonable application of Strickland because of the fact that the Petitioner was not entitled to relief based on the facts alleged in the Petitioner's  Now, if you look at the case of Dr. Stahlberg, and his report was very unfavorable, now, it's your argument that it was ineffective for them not to continue their search for a helpful expert and come upon Drs. Vinogradoff and Olsen or someone like them during that period of time? Is that the claim? I'm sorry, Justice Alito, that's not my argument. I think there are many times where it would be perfectly acceptable for a trial counsel to hire a mental health expert, receive a report, and say, based on what we have, we're not going to use this route. But it wasn't acceptable here, because what happened here is they hired a mental health expert in the middle of the guilt phase who went down on a Sunday for 1 to 2 hours without any of the documents that he said he said that he needed to do a proper mitigation investigation, and he gave them a letter that they had to have known on its face showed Dr. Stahlberg did not have enough information to render a competent psychiatric opinion. That's, again, it would be helpful, maybe you can't do this from the top of your head. But when I looked at the Ninth Circuit on Bank decision, I found a long discussion on page 79 following by Chief Judge Kaczynski in dissent, from which I got the impression that the majority was not sane. We think the State court decision here was unreasonable or violated clearly established law based on the record before the State court on habeas, State habeas. Now, you've just told me in the 70-page opinion by Judge Smith, there is a paragraph or something that says, even with all this issue out of it, the extra evidence, we still think that looking just at the evidence before the State court, habeas, and just at their decision, we think in light of all these things you now are bringing up, that that was a unreasonable application of clearly established Federal law or at least was based on an unreasonable determination of the facts, in other words, satisfied D. Where does it say that? That would save me a lot of time if you know that off the top of your head. Scalia. Page 35, I've spent all that time. Breyer. Well, that's very good, Your Honor. Justice Breyer, the Ninth Circuit said, Although Pinholster substituted experts during the proceeding who ultimately developed different mental impairment theories, these experts nonetheless relied on the same background facts that Pinholster presented the State court. Accordingly, if 2254e2 were to limit the scope of the evidence before us, it would exclude only the new mental impairment theories introduced in Federal court. And their exclusion would not affect our result. Well, there you are. And I should have asked Justice Scalia beforehand. So you're putting your eggs in the basket that under AEDPA what happened here was objectively unreasonable. Well, would you want to go on and look at the question on which we granted cert and argue that we should look at the new evidence or that the State court should look at the new evidence? Well, we think what happened here was perfectly appropriate for the Court to hold a hearing. No hearing had been held in State court, and the Federal court determined that a hearing was appropriate because Pinholster had been diligent in attempting to develop the facts, and that is the test that this Court has set forth in Michael Williams. Roberts Well, this, I get it, your friend pointed it out, and I have to say it's a logical conundrum for me, too. You have to show under e2 that the factual predicate could not have been previously discovered, and your claim is that his lawyer should have discovered this. They both can't be true. And if the former is not true, you don't get a hearing, and if the latter is not true, you don't get relief. Well, I guess it depends on how one interprets the term factual predicate, because if we focus on mental health impairments and how impairments affect intent and culpability and how it plays out on the specific facts of the crime, Pinholster did discover those, even though he didn't have discovery or an evidentiary hearing. He did allege them, and he should have been given a hearing where he would have then further developed those facts, just as he did in Federal court when he received the hearing that he should have received in State court but did not. There's nothing wrong with that, but we don't need that hearing. Sotomayor Could you go back to Justice Kagan's earlier question of how we draw the line at what level of generality is sufficient to say that a factual basis of a claim has been developed? I think we draw the line by focusing on what is legally relevant, not a DSM opinion. I have to say, as a long-time public defender, my experience is that the mental health professionals often speak about the legally relevant facts in different ways based on the DSM, but the focus on what matters, what was his impairment, how did it affect him. He was right before the homicides at the house of a friend in an erratic state, saying he had a message from God, brandishing a knife and putting it into the door. Dr. Stahlberg, who did this mid-trial evaluation, said that that was extraordinarily important to him because it showed that this was not a cold and calculated murderer, as he thought when he didn't have the information, but it showed we had a severely impaired person and he thought, because of his epilepsy and mental health condition, he was hypersensitive. Alito Well, suppose a Petitioner in the State post-conviction proceeding proffers an affidavit from one mental health expert alleging one type of mental disorder. And then, after relief is denied in the State court, the Petitioner files in Federal Court and asks for an evidentiary hearing at which the Petitioner is going to call a dozen highly distinguished mental health experts who will testify to a very different mental disorder. Now, has the Petitioner developed the factual predicate for that claim in the State  Stahlberg I think it's going to depend on the facts of the case, but he's going to have a very difficult time. And that's the reason why there's Sotomayor Why? Explain why that the opinion is not a fact that's different. Stahlberg Because the opinion is based on facts. So the more differently the cases look, the more they focus on different underlying facts, different reasons and how they affect conduct differently, the more it's going to be difficult because under this Court's doctrines, you have to do a Petitioner who wants to go to Federal Court with new experts, he's got to show first that he's diligent in trying to develop the facts and stake them. Alito Well, that's very complicated, just as your opponent's idea of what constitutes a claim is very complicated and fact-dependent. Would it not be better to say that the Petitioner in the example that I gave did not, was not diligent in developing all of the additional evidence that could have been brought forward at the State proceeding, assuming that it could have been, but was not brought forward until the Federal proceeding? The factual predicate of the claim is the new evidence that's brought forward in the Federal proceeding. And unless there's a good reason why that wasn't brought forward in the State proceeding, it shouldn't be considered. Stahlberg Justice Alito, I think that can and should be a part of analyzing diligence. And in the particular hypothetical that Your Honor has posed, it seems like it's going to be tough to show diligence. In this case, he does have good reasons. The State sat back in State court and didn't really address the allegations of mental health mitigation that weren't developed. They just simply said you shouldn't believe it, it happened too late. Scalia Mr. Kennedy, can I bring you back to page 35? The Court of Appeals opinion, Ninth Circuit's opinion says, Accordingly, if § 2254E2 were to limit the scope of the evidence before it, it would exclude only the new mental impairment theories, the new mental impairment theories introduced in Federal court, and their exclusion would not affect our result. The State contends that there was other factual material, not just those theories, but also the 6-1⁄2-hour timesheet evidence. So at least, you know, that really doesn't cover the waterfront of all new evidence. Well, the State also says in its reply brief that it's not just the affidavits, it's the affidavits looked at against the backdrop of the whole State court record. But, Mr. Kennedy, do you agree with the State that there are two things at issue here, there's the new medical testimony and there's also the billing sheets? Well, I respectfully don't, because the billing sheets in our State, there's a procedure where counsel has to submit the billing sheets to the court, and where the information comes from is the clerk's transcript, in this case, from the State court record. Oh, but that's not, that was not presented as evidence in the State court, the billing sheets. No, we said he didn't prepare at all in State court. And then when the billing sheets were revealed, Mr. Brainerd, who is the lawyer who did all of the witnesses at penalty phase, has an entry, begin preparing for penalty phase, and every one, that entry and every one after, is 6.5 hours. Could you just clarify again for me, I'm not sure I understand, the billing records in an, in, when do they get disclosed to? In our State, the appointed counsel submits a 987 form under penalty of perjury saying these are the hours I worked, I want to be paid, and it happens in real time and it was done throughout the trial, and it's part of the clerk's transcript. And the reason the district court admitted them in this case, they were, they were exhibits 67 through 72, and it's, they were admitted is because they were the records from the State court record, from the clerk's transcript. What about? What's important is that they are not, I mean, tell me if I'm wrong, but that they were not part of the State court record on which the State court made the 2254-D1 determination, is that right? Well, the, they were not, but the allegation was that they did nothing, so it was an even stronger allegation in State court than was ultimately pursued at the end of the hearing. To say that they were on record in the State court is not to say that they were part of the record, of the trial record. And these things were not part of the trial record, right? Well, the clerk's transcript is part of the trial record. The transcript is, is, part of the record is usually the reporter's transcript, the clerk's transcript, and the docket. So it's not part of the record. All that goes, goes to the fact finder? All that goes to a jury in criminal case? Oh, I'm sorry, Your Honor. I didn't mean to say that. It's not in the evidentiary portion of the record before the jury. It is part of the State court record. I'm sorry, I don't know the other one. When you said in State court, you just told us that this was better off because it's only 6 hours. And you said in State court they did nothing. Is that right? Yes. When you say they did nothing, surely that was rhetorical hyperbole. And you took the 6 hours and say this proves what we said, they did nothing. They did next to nothing. You're not saying, oh, well, it was 6 hours, so we're sorry we said they did nothing. I think what we did is we confirmed the allegation that we had made in State court, which is just another example of why it was important, based on these allegations, for Penholster to get a hearing to help his case. Roberts But that gets back to the point Justice Scalia was making, is that this is new evidence that the Ninth Circuit considered with respect to the original. In other words, they were not just saying, okay, even if none of this happened, we'd still rule against you. Because one of the new things they had was the 6-hour evidence, which you've just said makes your case stronger. I think it does make your case stronger, but it also makes clear that we can't say, let's just look, the Ninth Circuit just looked at what was there originally. Well, I think you can, because the Ninth Circuit – I mean, if you look at the – if the Court looks at the allegations in State court, there were – the allegations regarding counsel's performance was that they did not believe that they were going to a penalty phase, that because they did not look at the prosecutor's open file, they did not know that their theory that they would not have a penalty phase was wrong, and that they had no strategic reason to refer to it. Roberts You're going back to arguing that you win under the original proceeding and the question on which we granted service. Verrilli, yes. Roberts I just want to be as clear as possible. Justice Scalia read the sentence on page 35. I read the heading from what Judge Kaczynski said. Our review is limited to the record presented in the State habeas petitions. That's what he says. Now, you told me that the sentence he read means the majority there says if our record is limited to the record, our review is limited to the record presented in the State habeas petitions, you still win. Verrilli, yes. Roberts Okay, but that's not what it said. It said exactly what Justice Scalia said it said, so which is talking about the evidence coming in under E-2 or something. Now, I see a nightmare in front of me where I have to go through hundreds or thousands of pages to try to figure out whether they did or didn't mean our review is limited to the record presented in the State habeas petition. Verrilli, and I can ask you, is that conceded on both sides? Verrilli, well, what the Ninth Circuit majority was saying is that if there was some bar that E-2 had to holding a hearing where new evidence could be properly presented, that it wouldn't matter, because based on the record before it in State court, it proved a Strickland violation under Williams, Wiggins, and Rompilla, and it was objectively unreasonable. Scalia Yes, but that was on the assumption that the only new evidence would have been the evidence of, how did they put it, the new mental impairment theories introduced in Federal court, that that's the only new evidence that would be excluded, and the other side contradicts that. Verrilli, well, but I'm sorry. Sotomayor Counsel, could I just ask one clarifying question?  You said that the record was prepared, but you also had the record below, which was sent automatically to the judges to review as well. The billing records that we're talking about, you say they were part of the record below. Would that automatically have been sent under California law to the reviewing court? Verrilli, Yes, because it's the same that we have automatic appeals, and the habeas case is done in front of the Supreme Court. So the entire record, I believe, is before the California Supreme Court, and it's also my understanding that the State makes the same argument in its reply brief, that it's not just pinholster's allegations, it's pinholster's allegations considered against the total record. But even if the specific allegation of 6.5 hours was not there, the allegation was that counsel had done nothing to prepare, that they had not spent any time preparing because they wrongly believed that they were not in a death sentence. Scalia I wouldn't believe that. I mean, you had nothing to support it. I mean, I'd say that's just lawyer's puffery. Verrilli, Well. Scalia Whereas, you come up with a record that shows 6.5 hours. I mean, that's something. Verrilli, Your Honor, the lawyers made this revelation in court, at trial, in front of the famously aggressive prosecutor and the trial judge who knew these lawyers and had sat through the hearing, and no one had any suggestion that it was puffery or it was false. In fact, the trial prosecutor started to staunchly defend her conduct by saying, look, I offered them to look at my file, and they didn't show up, which sounds, you know, strikingly similar to Rompilla, where counsel doesn't even look at the file, that will reveal that their whole defense is problematic and built on a lie. Roberts How long does it take to read Dr. Stahlberg's report that says, I've looked at this, I've examined this, this, and this, and there's nothing here that's going to support a mental impairment theory? Verrilli, It's very short, but the report, when they read that quick report, on its face, they had to know that he wasn't prepared enough to render an opinion. He seemed not to know about this incident about, I have a message from God, and all of the drinking and drug use beforehand. And the report doesn't even mention the head injuries being run over by his mother and going through the window. Counsel had to know these things, first, because that witness testimony had occurred days before Dr. Stahlberg's Sunday interview, and, two, at least at some point in time, the mother said these things happened, and they had to know that that report didn't appear to know that there were serious traumatic head injuries. Roberts Counsel, just to get back to E-2, what is specifically the factual predicate that could not have been previously discovered in this case? Verrilli, The factual predicate that could not be discovered was the evidence  It was the evolution of the mental health testimonies as it moved from affidavit to live testimony, and the state gave, for the first time, specific notice of how it was going to attack the presentation in state court. And all of the arguably new mental health theories were in response to the changes that the state itself had made in federal court. Thank you, counsel. Mr. Bilderbach, you have 5 minutes remaining. Thank you. Could you clarify the procedure question I asked earlier? Were the billing records made part of the record that went up to the California reviewing courts? Some, but not all of them were. Are you claiming the 6-hour one didn't go up? Well, of course, part of the problem is that the 6-and-a-half-hour figure is arrived at by purportedly adding up all of the hours spent in preparation. I'm just asking a simple question. Was the — were the billing records that were used ultimately to calculate the 6 hours were they before the California reviewing courts? Yes. The billing records that the Ninth Circuit relied upon were before the California Supreme Court in the context of the clerk's transcript that was presented to the California Supreme Court in the appeal. However, there were important — indeed, the most important records that might have shed light on the amount of time that counsel actually spent preparing were never presented to the California Supreme Court. Indeed, those records were never presented to the federal court. Those were the records of Mr. Detmer. Mr. Detmer was the lawyer principally tasked with preparation of the case in mitigation at the penalty phase. And there were no records for Mr. Detmer for the 6-week period leading up to and through the penalty phase. And it — given the time. Is that where the 6-and-a-half-hours came from, those records? No. The 6-and-a-half-hour came from Mr. Brainerd's records. Mr. Brainerd was the lawyer. Which the California court had. Yes. The California court had Mr. Brainerd's records. So it's not new evidence then. It wasn't new evidence before the Federal court. Well, again, the allegation that there were only 6-and-a-half-hours spent in preparation, that allegation was never made to the California Supreme Court. But if I'm a reviewing court and I'm told the lawyer spent no time preparing I beg your pardon, Your Honor? When I was a reviewing judge on the court of appeals, someone said he didn't spend any time doing X, Y, and Z. The first thing I went to was the billing records. Do the billing records dispute that or not? Yes. So I'm assuming, I have to assume, I don't have to assume, but it's not new evidence. They had it before them. The billing records, again, the billing records upon which the Ninth Circuit arrived at its conclusion that there were only 6-and-a-half-hours was before the State court. However, the allegation that there were only 6-and-a-half-hours spent in preparation was never presented to the State court. And, indeed, the records presented to the State court were incomplete in a way that would not admit to that conclusion. If you're relying on allegations rather than the evidence, the allegation was even worse. The allegation was zip. Exactly. Spent no time. But that allegation. Well, exactly. That doesn't help you. No, it does, Your Honor, because that allegation was plainly false based upon the State court record. The State doesn't blindly accept any factual allegation made in the petition. It reviews those allegations in light of the State court record. And in this case, as the Court indicates, the State court record plainly showed that the allegation that they did nothing to prepare for the penalty phase was false. And, indeed, the State court record showed that they began preparing for the penalty phase well before the penalty phase began. So the factual allegation that was presented to the State court was not only false based on the State court record, it was affirmatively disproved during the Federal evidentiary hearing. It's very difficult to see how we can arrive at the conclusion that the State court determination was unreasonable when, in fact, it was correct. Is this right, then, that first, for you to win, the first thing we have to say is we're going to look at page 35, and they say, looking at the State court record, the State courts were, in effect, unreasonable. We have to say that was wrong. We have to look through the evidence and say that was wrong. Then you're at first base. Yes. And to get home, we now have to look at the new evidence, and there it's some combination of, A, there was nothing to have a hearing about, because there's nothing here that lets you have a hearing, or, B, there was something to have a hearing about, because this was so new that it was a new claim, and you should have gone to the State court first on that one, but there's no room to do it. They don't let you do it. So, okay, judge in the Federal court, you have the hearing, and now, when you have the hearing, first see if there was the diligence, and there wasn't. That gets you home. That's the whole argument. The only point with which I would take issue with the Court's characterization is that I assume the Court was not speaking hypothetically. The Court's speaking about my case. In my case, the State court's doors are not closed. Why isn't this part of the thing? If you have a new claim here, go to the State first. Because the exhaustion difficulty in this case, the exhaustion problem in this case, is a consequence of the errors that the Federal court made in doing the D1, in failing to do the D1 determination at all, and in taking evidence in clear derogation of E2. If you ever take evidence in derogation of E2, you're going to end up with an unexhausted claim, and that's precisely what happened here. Roberts. Roberts. Admit it. The Honorable Court is now adjourned until tomorrow at 10 o'clock.